FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2018 MAR 16 P 1: 28

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| EDDIE MURPHY, #306651, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: GJH-16-3077 |
| NICOLAS SOLTAS, CO II, | * | |
| CO II CRAIG SAUTER, | | |
| LT. BRADLEY WILT, | * | |
| CO II JASON FRANTZ, | | |
| CO II CHRISTOPHER ORTT, | * | |
| CO II RONALD SAVILLE, | | |
| OFFICER PORTMESS, | * | |
| LT. WILLIAM GILLUM,[1] | | |
| SGT. WALTER ISER, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Pending before the Court is Plaintiff Eddie Murphy's *pro se* Complaint filed pursuant to 42 U.S.C. §1983. ECF No. 1 at 9. Murphy claims Defendants used excessive force against him, retaliated against him for filing an action in this Court, failed to protect him from harm, and subjected him to unconstitutional conditions during the time he was an inmate at North Branch Correctional Institution in Cumberland, Maryland. Lt. Walter Iser, Lt. William Gillum, former Lt. Bradley Wilt, C.O. II Nicholas Soltas, C.O. II John Portmess, C.O. II Craig Sauter, C.O. II Ronald Saville, C.O. II Jason Frantz, and former C.O. II Christopher Ortt (collectively the "State Defendants"), by their counsel, filed a Motion to Dismiss or, in the Alternative, Motion for

---

[1] William Gillum's rank is lieutenant. Gillum Declaration, ECF No. 43-13. The docket will be corrected.

Summary Judgment. ECF No. 43.[2] Murphy was provided an opportunity to respond with materials in support of his claims and granted an extension of time to do so, ECF Nos. 44, 48, 50, but he did not file a Response.

Murphy's claims against the State Defendants are ready for adjudication. No hearing is required. *See* Local Rule 105.6 (D. Md. 2016). For reasons to follow, the State Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, ECF No. 43, will be treated as a Motion for Summary Judgment, and granted.

**I.    BACKGROUND**

**A. Procedural History**

Murphy filed the instant action against the State Defendants and two Medical Defendants on September 2, 2016.[3] ECF No. 1. On September 8, 2017, the Court granted Medical Defendants Krissi Cortez and Greg Flury's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment and denied their Motion for Attorney's Fees and Costs without prejudice to refiling upon disposition of the State Defendants' claims. ECF No. 50.[4]

The Court incorporates here the facts and standard of review set forth in its September 8, 2017 Memorandum Opinion. ECF No. 49.

---

[2] Bradley Wilt retired on December 31, 2016. ECF No. 43-2 n. 9. Christopher Ortt resigned from state service on February 28, 2017. *Id.* n. 2.
[3] Murphy first presented his claims in a Complaint filed on October 9, 2013, in *Murphy v. Wilt, et al.*, WDQ-13-2975 (D. Md. 2013). The Court later granted Murphy's Motion to Withdraw the Complaint without prejudice. *Id.* at ECF No. 22. In the instant case, Murphy "adopts and incorporates some of his" Complaint filed in *Murphy v. Wilt, et al.*, Civil Action No. WDQ-13-2975 (D. Md. 2014), although he does not identify which portions of his earlier complaint he intends to adopt or incorporate. ECF No. 1 at 2. The Court will consider his claims as they are set forth in the instant Complaint.
[4] In Civil Action WDQ-13-2975, Krissi Cortez, R.N. was also a Defendant. *Id.* On October 21, 2014, Murphy moved to withdraw the Complaint without prejudice until he was able to hire counsel or was released from prison and "properly pursue his Complaint." ECF No. 21. At the time, Cortez already had filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment in response to the Complaint. ECF No. 13. The Court granted Murphy's voluntary Motion to Withdraw and dismissed the case without prejudice, pursuant to Fed. R. Civ. P. 41. ECF No. 22. Murphy was cautioned that if he commenced an action based upon the same claim against Krissi Cortez, Fed. R. Civ. P. 41(d) permits a court to order the payment of costs of the actions previously dismissed as may be proper and stay the proceedings pending compliance. ECF No. 22.

## B. Murphy's Allegations

Murphy alleges that on September 25, 2013, Officer Ortt ordered him to "cuff up" for an escort. ECF No. 1 at 2. Ortt allegedly threatened Murphy that he could not "get away from [Ortt]," a statement purportedly made in retaliation for filing suit against other correctional staff in *Murphy v. Rounds, et al.*, Civil Action No. WDQ-13-2480 (D. Md. 2014). *Id.* Murphy claims that he has a history of anxiety and depression, and that the encounter with Ortt made him anxious as he did not feel safe, so he requested to see a mental health care provider. *Id.* Officers Ortt and Portmess denied his request. Murphy then observed Lt. Wilt and an extraction team standing to the right side of his cell wearing protective gear, initially out of his view so that he could not see them. ECF No. 1 at 2–3.[5] Murphy assumed Wilt was about to deploy pepper spray into the cell, and asked Wilt if he could see his mental health provider. *Id.* at 3. At the same time, Murphy started to place his mattress in front of the cell door. *Id.* This action "backfired," because instead of having a mental health provider "coax him out," Wilt "aimed to punish him" and administered pepper spray into the cell. *Id.*

Murphy was taken from his cell for a medical evaluation, then "forced" to remove his clothing and tennis shoes, given a smock, forced to walk barefoot to the shower, and placed in a shower "for about two seconds" and then pulled out of the shower. ECF No. 1 ¶ 6. This, he alleges, caused the pepper spray to trickle down and spread instead of providing any relief. *Id.* Murphy claims he told Wilt the shower was inadequate, but Wilt refused to allow him a proper decontamination shower. *Id.* Murphy claims Wilt's actions amounted to a wanton infliction of pain. *Id.* Murphy states that he was subsequently placed in a "strip cell" for seven days where he was in pain from the burning caused by the pepper spray. ECF No. 1 at 3 ¶ 7.

---

[5] Lt. Wilt identified the members of the extraction team on the recording of the incident. ECF No. 43-6. None are Defendants in this action.

3

Murphy claims that he was corporally punished with malicious and sadistic intent. ECF No. 1 ¶ 9. He argues that "strip cells" are supposed to be used only as a last result such as when an inmate destroys his toilet or the shelves in his cell, but at NBCI they are used as corporal punishment. ECF No. 1 ¶ 9. Murphy asserts that his placement in the strip cell was unjustified because there was no evidence that he had destroyed anything. ECF No. 1 ¶ 10.

Murphy references the Department of Public Safety and Correctional Services' (DPSCS) Use of Force Manual for the principle that confrontation avoidance must be employed before force is used. ECF No. 1 ¶ 12. Murphy reasons that case managers or mental health staff must therefore be contacted before use of force is employed. *Id.* Then, only the minimum amount of force reasonably necessary to control or stop the noncompliant behavior is permitted. *Id.*

Murphy also claims that despite knowing that Bloods and Black Guerilla Family ("BGF") gang members had threatened him with harm, Defendants placed him in "conditions" to "flush him out" of the isolation cell on the premise he had no validated gang threats or enemies. ECF No. 1 ¶ 13. Murphy alleges that Lt. Thomas, an intelligence officer,[6] has a list of all validated gang members. *Id.* Murphy claims that on October 7, 2013, Defendants Sauter, Ortt, Saville, Franz and Soltas, upon Lt. Wilt and Sgt. Gillum's orders, forced him into a double occupancy cell with Jodie Hill, who Murphy alleges is a validated gang member of the Bloods serving a life sentence. ECF No. 1 at ¶¶ 13–14. Murphy states that Defendants "[k]new of threats of harm to Plaintiff by Blood and BGF gang members." ECF No. 1 at 5 ¶13. In support, he references an October 7, 2013 mental health note written by Amanda L. Tart, LCPC. *Id.* Tart's note indicates that Murphy was expressing concerns about prison gang issues. ECF No. 1-10 at 1. Tart's note reads "Lt. Wilt advised Inmate that he currently has not validated gang threats or enemy situations at NBCI. Lt. Wilt personally verified this again today by checking Inmate[']s

---

[6] Lt. Thomas is not a Defendant in this case.

enemy list on OBSCIS." *Id.* The note continues that "[d]ocumentation from other psych staff on 2/26/13 and 3/1/13 also indicates Intell was previously informed of inmate's gang/safety concerns." *Id.* Murphy claims that he was tied up and beaten by his cellmate, but Defendants covered up the incident by saying that it was staged. ECF No. 1 ¶ 15.

Murphy alleges that he became more depressed and disturbed as a result of the excessive force incident. He faults Defendants for failing to explain why they did not call mental health staff prior to the cell extraction, causing him to feel "trapped." ECF No. 1 ¶¶ 16–17.

As relief, he asks for compensatory and punitive damages of $500,000 against each Defendant. ECF No. 1 ¶ 21.

## II. STANDARD OF REVIEW

The State Defendants' motion is styled as a Motion to Dismiss, or in the Alternative, for Summary Judgment. ECF No. 20 at 1. If the Court considers materials outside the pleadings, as the Court does here, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id; see also Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Furthermore, the Court may grant a motion for summary judgment before the commencement of discovery. *See* Fed. R. Civ. P. 56(a) (stating that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" without distinguishing pre-or post-discovery).

Summary judgment is appropriate if "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), show that there is

5

"no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322-23. A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Murphy was provided notice of the State Defendants' filing of exhibits and affidavits to support the Motion for Summary Judgment and has not responded. ECF No. 44.

### III. DISCUSSION

In support of their dispositive motion, the State Defendants have filed verified evidence including a high-definition first-person recording of Murphy's cell extraction, declarations from correctional officers, and his prison records. ECF No. 43. Because Murphy was provided an opportunity to respond with exhibits and declarations, ECF No. 44, the Court will treat Defendants' Motion as one for summary judgment.

6

## A. Use of Excessive Force Claim

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). A court must look at "the need for application of force"; "the relationship between that need and the amount of force used"; "the extent of the injury inflicted"; "the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials"; and "any efforts made to temper the severity of the response." *Whitley v. Albers*, 475 U.S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). The extent of the injury incurred is one factor indicating whether the force used was necessary in a particular situation, but if force was applied maliciously and sadistically, liability is not avoided simply because the prisoner had the "good fortune to escape without serious injury." *Id.* at 36–38.

"[I]t is generally recognized that it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain." *Iko v. Shreve*, 535 F.3d 225, 240 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996)) (emphasis and internal quotation marks omitted). However the use of pepper spray is not "per se a cruel and unusual punishment," *McCargo v. Mister*, 462 F. Supp. 813, 818 (D. Md. 1978), and it may be used in order "to control recalcitrant inmates." *Williams*, 77 F.3d at 763 (quoting *Landman v. Peyton*, 370 F.2d 135, 138 & n.2 (4th Cir. 1966)). As with all excessive force claims, determining whether the amount of chemical agent used was appropriate focuses on whether a defendant acted with a sufficiently culpable state of mind: "wantonness in the infliction of pain." *Iko*, 535 F.3d at 239–40 (citations

7

omitted) (holding a correctional officer was not entitled to qualified immunity where an additional chemical agent was deployed into the inmate's cell after the inmate attempted to comply with officer's order, did not react violently, and the officer failed to remove inmate's clothes or secure medical care for inmate after chemical agent exposure).

An officer may be liable for Eighth Amendment violations when he or she deploys more than a reasonable amount of a chemical agent. *See, e.g., Furnace v. Sullivan*, 705 F.3d 1021, 1025 (9th Cir. 2013) (finding Eighth Amendment violation where officer discharged can of pepper spray until empty, and other officer also joined in). However, when an inmate ignores official commands repeatedly, multiple applications of pepper spray have been found to be reasonable. *See Williams*, 77 F.3d at 759, 763 (finding no Eighth Amendment violation where officer administered pepper spray after prisoner asked "Why?" in response to command); *Jackson v. Morgan*, 19 Fed. App'x 97, 99, 102–03 (4th Cir. 2001) (upholding use of pepper spray twelve times when inmate refused to comply with commands to move from his cell and did not demonstrate "more than de minimis injury").

### 1. DVD Recordings

Defendants filed two DVD recordings of the September 25, 2013, cell extraction. ECF No. 43-6. The first, taken from a stationary hallway camera, provides little information about the incident because of its long distance view from the action and lack of sound. The second DVD provides more information. The recording was made with a handheld camera, there is audio, and the participants are identified. Murphy has viewed both recordings, and was given an opportunity to respond to them.[7]

---

[7] The Court ordered that Murphy be permitted to view the recordings and Defendants submitted statements under oath indicating that they complied with the Order. ECF Nos. 45, 46.

8

The second DVD recording begins with Lt. Wilt stating that Murphy refused to be handcuffed so that he could be escorted to another cell.[8] ECF No. 43-6. Wilt states that Murphy had also threatened to break the sprinkler head in his cell. *Id.*; *see also* ECF No. 43-7 ¶ 8. Wilt states that medical and mental health providers were contacted to make sure there was no medical or mental health reason that pepper spray could not be used as part of the cell extraction, and they indicated that there was no a problem. ECF No. 43-6.

At approximately 8:55 a.m., Officer Ortt, acting as the negotiator, gave Murphy at least three chances to voluntarily be placed into handcuffs. Contrary to Murphy's allegations, Ortt did not threaten Murphy. Ortt did, however, make clear to Murphy that if he continued to refuse, he would be forced to comply. Murphy can be heard saying that he needs some help. ECF No. 43-6. Murphy can also be seen pressing his mattress against the cell door. Wilt then calmly administered two bursts of pepper spray into Murphy's cell and waited for the pepper spray to take effect. *Id.*

At approximately 8:59 a.m., Wilt gave Murphy another opportunity to comply. Murphy went to the slot of the cell door, turned around, and handcuffs were placed on him. Murphy was escorted directly to the medical room where he was evaluated. Murphy can be seen looking at the camera, and does not appear to be externally in pain or agitated. Murphy asked for a shower. He was told he would be provided a "controlled shower." ECF No. 43-6. From there, he was strip searched, placed in a smock, and escorted to a shower. In the shower, Murphy was told to place his head under the shower. Roughly fifteen seconds later, Murphy was taken out of the shower. Water can be seen on Murphy's face as he left the shower. He was escorted to a cell.

---

[8] Wilt states in the recording that Murphy had written a letter to a staff member which necessitated he be moved to another cell. ECF 43-6. On September 25, 2013, Murphy was reassigned from Housing Tier #1 on C tier, Cell #2 to a cell located on Unit #1 B Tier. ECF No. 43-7 ¶ 4.

9

Before entering the cell, Murphy asked to go back to the shower because he still had mace on him. Murphy was told there was water in his cell. The DVD ended at approximately 9:12 a.m.

### 2. Other Records

Later that day, Murphy was given a Notice of Infraction for disobeying an order (Rule 400) and refusing to accept a housing assignment (Rule 401). ECF No. 43-7 ¶ 9.[9] Murphy was housed in a temporary cell until his behavior was "sufficiently de-escalated." *Id.*, ¶ 10. "Staff attempted to place him back in his assigned disciplinary segregation cell several times over the course of the next several days. However, they were not able to do so successfully until October 2, 2013." *Id.*

Based on the records provided, several of the Defendants were not involved in Murphy's extraction from his cell and subsequent treatment. Officer Soltas claims not to have been at work on September 25, 2013, which is confirmed by prison work logs. ECF No. 43-11; ECF No. 43-12 ¶ 4. Similarly, Lt. Gillum was in a training class on September 25, 2013, and was not involved in Murphy's cell extraction. ECF No. 43-13. Officers Sauter and Saville, who were at work on September 25, 2013, attest they were not involved in Murphy's cell extraction. ECF No. 43-14 ¶ 4; Saville Declaration, ECF No. 43-15 ¶ 4. Officer Frantz's only involvement was to record the extraction. ECF No. 43-8 ¶ 4.

Officer Portmess declares "[t]o the best of his personal recollection" that Murphy did not tell him on September 25, 2013, that he wanted to see a mental health provider. ECF No. 43-10 ¶ 10.

### 3. Analysis

As an initial matter, the Court grants summary judgment to Defendants Soltas, Gillum, Sauter and Saville. Murphy does not refute the records showing that these Defendants did not

---
[9] No further information about the Notice of Infraction is included in the record.

10

participate in the cell extraction. As such, they are entitled to summary judgment in their favor as to Murphy's use of excess force claim.

Viewing the evidence in the light most favorable to Murphy, there is no dispute of a material fact and Defendants Wilt, Portmess, Iser, and Ortt also are entitled to summary judgment on Murphy's excessive force claim. Murphy does not dispute that he refused Officer Ortt's multiple orders to voluntarily be handcuffed, that Ortt explained to him that unless he complied with the order, force would be used against him, that he had threatened to break the fire sprinkler in his cell, or that he used his mattress as a barricade against his cell door. Murphy's recounting of the incident indicates that he was aware that an extraction team had been assembled and use of pepper spray was likely, yet he continued to refuse to agree to handcuffs. Notably, Murphy does not refute Lt. Wilt's statement on the DVD recording that mental health and medical providers had been contacted before the cell extraction to make sure Murphy could be exposed to pepper spray if necessary. ECF No. 43-6.

Under these circumstances it is clear that some force was necessary to secure Murphy's movement to another cell and to prevent his threatened destruction of the fire sprinkler. Minutes after Murphy agreed to be placed in handcuffs, he exited the cell and walked with an escort to the medical room for evaluation, where he was strip searched. There is no evidence on the DVD that Murphy was unlawfully "forced" to walk to the medical room, to remove his clothing and wear a smock, or walk to the shower. The DVD makes evident that Murphy walked without difficulty and of his own volition. The DVD also makes clear that Murphy was provided a decontamination shower. Prompt washing and medical attention have been considered a sufficient step to mitigate the use of chemical agents. *See Williams*, 77 F. 3d at 763. Although the decontamination shower was brief, Murphy does not dispute there was also water in his cell,

available to him to wash any traces of pepper spray off. There is no evidence that the duration of the administration of pepper spray or the amount used was excessive, or contrary to Department of Corrections policies. It is clear that Wilt's use of pepper spray was not excessive in relation to the need to maintain institutional security and order. For these reasons, the Court grants summary judgment in favor of Defendants Iser, Wilt, Portmess, Frantz, and Ortt.

### B. Failure to Protect

Murphy also alleges that he was placed in a double occupancy cell with an individual who subsequently harmed him, and that Defendants were responsible for that harm. To bring an Eighth Amendment claim for failure to protect from violence, a plaintiff must establish that defendants exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). "Prison conditions may be 'restrictive and even harsh,' but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833–34 (1994) (citations omitted). However, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837; *see also Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997).

A failure to protect claim must satisfy an objective and subjective standard. Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or a substantial risk of injury. *Danser v. Stansberry*, 772

F.3d 340, 346–47 (4th Cir. 2014). The objective inquiry requires a court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

Although Murphy does not describe the event on which his failure to protect claim is premised, Defendants have filed a Use of Force Report dated October 7, 2013, which states that on that day Officers Soltas and Ortt were called to Murphy's cell, Officer Ortt observed Murphy was loosely bound at the feet and hands, and inmate Jodi Hill appeared ready to strike him. ECF No. 43-17. As Hill moved to strike Murphy, Ortt deployed pepper spray to prevent an assault. Both inmates complied with orders to be handcuffed and were taken to the medical room for evaluation and received a decontamination shower. ECF No. 43-17. The Court construes this as the event to which Murphy is referring.

Murphy's Enemy Alert did not list Jodi Hill as an enemy. ECF No. 43-18. Defendants Frantz, Iser, Portmess, Soltas, Gillum, and Sauter, deny placing or attempting to place Murphy with a known enemy. ECF No. 43-8 ¶ 9; ECF No. 43-9 ¶ 4; ECF No. 43-10 ¶ 9; ECF No. 43-12 ¶ 5; ECF No. 43-13 ¶ 8; ECF No. 43-14 ¶ 8; ECF No. 43-15 ¶ 9. Of importance here, Murphy was immediately reassigned to another cell after the incident. ECF No. 43-17; ECF No. 43-19 at 4; ECF No. 43-20 at 1.

Murphy has not sufficiently presented facts to suggest that Defendants were subjectively deliberately indifferent to his safety by placing him in a cell with a purported enemy. Amanda Tart's record indicates that Lt. Wilt checked and rechecked Murphy's enemy list and found he had no validated gang member enemies at NBCI. ECF No. 13-4. Murphy fails to raise facts sufficient to show that Defendants were aware of a particular danger to him by placing him in a

13

cell with Hill. For these reasons, the Court finds there is no genuine dispute as to any material fact, and Defendants will be granted summary judgment as to this claim.

### C. Conditions of Confinement

Conditions that "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981). However, conditions that are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." *Id.* "In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that the deprivation of [a] basic human need was *objectively* sufficiently serious, and that *subjectively* the officials acted with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (citation and internal quotation marks omitted). "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir.1993).

Murphy complains that he stayed in a "strip cell" for seven days. ECF No. 1 at 3 ¶ 7. During this time, he alleges that he suffered a burning sensation caused by the pepper spray. Wilt explains that staff attempted several times to return Murphy to his cell in disciplinary segregation over the next few days but were unable to do so until October 2, 2013. ECF No. 43-7 ¶ 9. Wilt does not particularize the reasons why Murphy was unable to return to his cell earlier.[10] Importantly, Murphy does not dispute that on September 25, 2013, he was given a decontamination shower for pepper spray exposure and then placed in a cell with water where he could wash himself. Even when the facts are viewed in the light most favorable to Murphy, there

---

[10] In a related case, *Murphy v. Ortt*, Civil Action No. GJH-16-3092 (D. Md.), there is verified evidence that during this time, Murphy spit at an officer and stated "Fuck you bitch next time I'll shit you down," attempted to destroy the fire sprinkler in his cell, and flooded the tier with water. *Id.* at ECF 31-7; ECF No. 31-17 ¶ 7.

is no suggestion of the deprivation of a basic human need or that Defendants acted with a sufficiently culpable state of mind amounting to deliberate indifference. No genuine dispute as to any material fact is presented. Defendants are entitled to summary judgment in their favor as a matter of law.

### D. Retaliation Claim and Verbal Threats

To sustain a claim of retaliation, a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Importantly, "a complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Gill v. Mooney*, 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)). Furthermore, where "there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim." *ACLU of Md., Inc. v. Wicomico Cty, Md.*, 999 F.2d 780, 785 (4th Cir. 1993).

Murphy claims that Officer Ortt threatened him in retaliation for filing suit against other correctional staff. Defendants' DVD, however, contradicts Murphy's claim that Ortt threatened to retaliate against him on September 25, 2013. Where, as here, clear evidence refutes an allegation made by a party, this Court is not obliged to take the factual basis of the claim as true. *See Witt v. W. Va State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (stating that "when a video 'quite clearly contradicts the version of the story told by [the plaintiff] . . . so that no reasonable jury would believe it, a court should not adopt [the plaintiff's] version of the facts for purposes of ruling on a motion for summary judgment.'") (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)). Further, Defendants Franz, Iser, Portmess, Gillum, Sauter, and Saville deny

15

threatening, harassing, or retaliating against Murphy. ECF No. 43-8 ¶¶ 5, 8; ECF No. 43-9 ¶¶ 7, 10; ECF No. 43-10 ¶¶ 5, 8; ECF No. 43-12 ¶ 6 ; ECF No. 43-13 ¶¶ 5, 9; ECF No. 43-14 ¶¶ 5, 8; ECF No. 43-15 ¶¶ 5, 8. Even if any of these officers had threatened Murphy, mere verbal threats do not amount to a constitutional violation. *See, e.g., Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979); *Barney v. Pulsipher*, 143 F.3d 1299, 1310 n.11 (10th Cir. 1998) (stating that mere verbal threats are not actionable under § 1983).[11]

Under these circumstances, even when the facts are viewed most favorably to Murphy, the alleged facts do not amount to a constitutional claim of retaliation. Because there is no genuine dispute as to any material fact, the Court will grant summary judgment in favor of the State Defendants.

### IV. CONCLUSION

For the foregoing reasons, the State Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment is granted. The Medical Defendants shall be allowed to resubmit their Motion for Attorney's Fees and Costs. A separate Order follows.

Dated: March 16, 2018

GEORGE J. HAZEL
United States District Judge

---

[11] The Court further notes that Murphy's ability to file proceedings in this Court was clearly not adversely affected by Ortt's alleged retaliation. *See e.g. Murphy v. Wilt, et al.*, Civil Action No. WDQ-13-2990 (D. Md. 2014), *Murphy v. Ortt*, Civil Action No. WDQ-13-2990 (D. Md. 2014); *Murphy v. Statler*, Civil Action No GJH-26-246 (D. Md.); *Murphy v. Frenzel*, GJH-17-27 (D. Md.). Thus, there is no demonstrated adversity resulting from the alleged retaliatory act.